IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KATHERINE SMITH,<br><br>    Plaintiff,<br><br>v.<br><br>ASA McVICKER and JOHNSTON CITY, IL,<br><br>    Defendants. | Case No. 21-CV-01644-SPM |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

This matter comes before the Court for consideration of two Motions to Dismiss. Defendant Asa McVicker filed a Motion (Doc. 13) and memorandum in support (Doc. 14) relevant to Counts I and II of Plaintiff Katherine Smith's Complaint. (Doc. 1.) Defendant Johnston City, Illinois filed a Motion (Doc. 17) and memorandum in support (Doc. 17-1) relevant to Counts III and IV of the Complaint. Smith responded to each Motion. (Docs. 20, 21.) Having been fully informed of the issues presented, this Court denies McVicker's Motion to Dismiss and grants in part and denies in part Johnston City's Motion to Dismiss.

### Relevant Factual And Procedural Background

The following facts are taken from Smith's Complaint and the Court views them as true for the purposes of this Motion. On October 13, 2020, police from the Johnston City Police Department chased after the driver of a motorcycle. Smith was a passenger on the motorcycle. (Doc. 1 at 1.) "Finally, [the driver] brought the

motorcycle to a stop" and the two got down on the ground near some brush, where they were "located" by police. (*Id.* at 2.) Smith put her "hand over her head" and then placed her "hand behind her back" when police instructed her to do so. (*Id.*) K-9 Officer McVicker or another officer continued to threaten to release the K-9 partner, despite Smith and the driver's pleas to not release the dog. (*Id.* at 1-2.) McVicker, "acting under the color of law," released the K-9 and it attacked Smith, injuring her even though she did not resist arrest and followed officer commands at the time of the attack. (*Id.* at 2-3.) "The aforementioned acts by the defendant constituted grossly excessive force in violation of the Plaintiff's fourth and fourteenth amendment rights." (*Id.* at 3.)

Smith alleged that "the City of Collinsville, Illinois, had customs, policies, and practices that violated the Fourth Amendment rights of its arrestees under the United States Constitution," including that it hired and retained McVicker, "knowing that he was likely to violate the rights of his arrestees" and "knowing or should have known he had routinely violated the rights of arrestees previously." (Doc. 1 at 4-5.) Smith stated that the city "failed to investigate, discipline, and/or fire McVicker for such violations" and "[otherwise] violated plaintiff's constitutional rights." (*Id.* at 5.)

### APPLICABLE LAW AND LEGAL STANDARDS

In analyzing a motion to dismiss for failure to state a claim filed pursuant to Federal Rule of Civil Procedure 12(b)(6), this Court must determine whether or not the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court of Appeals

for the Seventh Circuit has explained that "'[p]lausibility' is not a synonym for 'probability' in this context, but [plausibility] 'asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (quoting *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [the] [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

District courts are required by the Court of Appeals for the Seventh Circuit to review the facts and arguments in Rule 12(b)(6) motions "in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in her favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). "The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits." *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

## ANALYSIS

### I. Counts Against Asa McVicker: 42 U.S.C. § 1983 Claim (Count I) and "Willful and Wanton" State Law Claim (Count II) Asserting No Statutory Immunity under Illinois Law

As an initial observation, by even this Court's notice pleading standards, Smith's Complaint was poorly pleaded in some respects. *See* FED. R. CIV. P. 8(a)(2). A glaring example is the lack of basic pleading declaring suit against McVicker in an individual or official capacity. When filing a § 1983 action, the plaintiff should specify whether suit is brought against defendants in their official or individual capacities.

*See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). The Court does, however, recognize that her statement that McVicker acted under the color of law establishes that she alleged personal liability in individual capacity under § 1983. *Id*. In another example, Smith asserted willful and wanton conduct as a separate claim with little to no explanation that it is essentially a state law claim and defense to the Illinois Tort Immunity Act.

That said, as to Count I, to properly plead an individual-capacity suit, the plaintiff must allege that the defendant was "personally responsible for the deprivation of a constitutional right" because "he directed the conduct causing the constitutional violation, or it occurred with his knowledge or consent." *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (quoting *Chavez v. Ill. State Police*, 251 F.3d 612, 651-52 (7th Cir. 2001)). Under § 1983, a person can be held personally responsible if he was aware of the conduct causing the constitutional injury and he "facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (quoting *Jones v. City of Chi.*, 856 F.2d 985, 992 (7th Cir. 1988)). Here, Smith alleged that McVicker released the dog on her in violation of her "fourth and fourteenth amendment rights." (Doc. 1 at 3.) Using the facts from the Complaint, McVicker and Johnston City stated that Smith admitted she was in the midst of being apprehended by police after evading capture by hiding alongside the roadway near some brush. (Doc. 14 at 1, Doc. 17-1 at 1.)

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. CONST. amend. IV. This guarantee has been incorporated under the Fourteenth Amendment and

made applicable to the states. *See Mapp v. Ohio*, 367 U.S. 643, 655 (1961). While there are different kinds of Fourth Amendment seizures, a fair reading of the Complaint suggests that Smith asserted that McVicker used excessive force in the course of an arrest. "*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original). The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the luxury of hindsight. *Id.* at 396. To evaluate excessive force to effect an arrest, courts consider: 1) the severity of the crime at issue; 2) the immediate threat to the safety of the officers or others posed by the suspect; and 3) the resistance by the suspect, including active resistance or attempting to resist arrest by flight. *Id.*

In this case, taking Smith's pleadings as true, her claim is plausible under this framework. Smith said that she was not resisting arrest or attempting to flee at the time the K-9 bit her. Moreover, she asserted that she had her hands behind her back when the K-9 bit her. Therefore, the Court rejects McVicker's Motion regarding insufficiency of the Complaint related to her alleged constitutional violation.

But, as McVicker argued, even if a claim is properly pleaded, it may still be dismissed if the defendant is immune from damages. Qualified immunity often bars suits brought against law enforcement for a violation of constitutional rights. Qualified immunity warrants dismissal at the pleading stage only when the plaintiff's well-pleaded allegations, "taken as true, do not 'state a violation of clearly established

law.'" *Hanson v. LeVan*, 967 F.3d 584, 590 (7th Cir. 2020) (citing *Behrens v. Pelletier*, 516 U.S. 299, 306 (1996)). To overcome qualified immunity, Smith's Complaint must contain facts indicating that McVicker violated her constitutional rights, and the right violated was clearly established at the time of the violation. *See id*.

As the Seventh Circuit has opined, dismissal under 12(b)(6) is not always, if ever, "the most suitable procedural setting to determine whether an official is qualifiedly immune, because immunity may depend on particular facts that a plaintiff need not plead to state a claim." *Hanson*, 967 F.3d at 589. "Because a qualified immunity defense so closely depends 'on the facts of the case,' a 'complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds.'" *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001)). Importantly, the right to be free from excessive force by a police officer is clearly established in the general sense. *See Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2001). Here, Smith has sufficiently asserted a violation of that broad constitutional right, and, at this early stage, the Court cannot say that McVicker should be free from suit. *See Hanson*, 967 F.3d at 590.

What is more, as to Count II, under the Illinois Tort Immunity Act, 745 ILCS 10/2-202, "[a] public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." The pursuit of a fleeing suspect constitutes execution or enforcement of law. *See Urban v. Village of Lincolnshire,* 272 Ill. App. 3d 1087, 1095-96 (1995). Conduct is willful and wanton when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for

the safety of others or their property." 745 ILCS 10/1-210; *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001). For the same reasons given for qualified immunity, it would be difficult to say that McVicker is immune from suit because he did not act willfully or wantonly.

As a result, Count I and Count II of Smith's Complaint are sufficiently pleaded to survive McVicker's Rule 12(b)(6) Motion.

The Court does find it necessary to caution, though, that it "has a variety of means at its disposal to move the case incrementally forward in order to address the qualified immunity issue at the earliest possible stage, so that a defendant who is immune from suit is not put through the time, effort and expense of defending himself against a claim upon which, ultimately, no relief can be granted." *Jacobs v. City of Chi.*, 215 F.3d 758, 765 n.3 (7th Cir. 2000) (citing *Crawford-El v. Britton*, 523 U.S. 574, 597–98 (1998) ("noting that the district court may order a reply to a defendant's answer under Rule 7(a) or a more definite statement of the plaintiff's claim under Rule 12(e)"); *Elliott v. Thomas*, 937 F.2d 338, 345 (7th Cir. 1991) ("stating that summary judgment may be granted in the district court's discretion without permitting discovery")). McVicker is free to use these alternative avenues should he think that they are warranted.

## II. Counts Against Johnston City, Illinois

### A. 42 U.S.C. § 1983 Claim (Count III)

Under *Monell v. Dep't of Social Servs.*, suits against a municipality are permitted if the Complaint demonstrates that the "execution of a government's policy or custom . . . inflict[ed] the injury." 436 U.S. 658, 694 (1978). An official policy can

be shown through: (1) an express policy causing constitutional injury when enforced; (2) a widespread practice so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. *See Estate of Sims ex rel. Sims v. Cty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007). A city (or government official) is not "automatically . . . liable under § 1983 if one of its employees happened to apply the policy in an unconstitutional manner." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989).

Similar to her claim against McVicker, Smith sought recovery from Johnston City, Illinois under § 1983. Johnston City moved for dismissal of this claim because the Complaint lacked pleading establishing that McVicker routinely violated the rights of arrestees, let alone that Johnston City knew or should have known about the violations. Johnston City further stated that Smith failed to plead any facts about the lack of training McVicker went through. Smith contended that the Complaint is sufficiently pleaded under this Court's notice pleading standards.

The inadequacies of Smith's Complaint show here. Smith pleaded her allegations against the City of Collinsville, Illinois. Even giving Smith another mulligan to look at the allegations as though they were against Johnston City, Smith has not alleged an express policy, nor has she alleged that her injury was caused by a person with final policymaking authority. Alleging that Johnston City hired and retained McVicker, "knowing that he was likely to violate the rights of his arrestees" and "knowing . . . he had routinely violated the rights of arrestees previously" does not constitute policy. Nor do the claims that Johnston City "failed to investigate, discipline, and/or fire McVicker for such violations" and "[otherwise] violated

Page 8 of 10

plaintiff's constitutional rights." Smith must plead facts that are plausible, not just possible. These are mostly conclusory allegations, which are not bolstered by sufficient factual allegations to meet the test for plausibility. Furthermore, to proceed on the claim of failure to train, Smith must demonstrate that the training in relation to the tasks performed by officers in general were inadequate; it is insufficient to demonstrate that McVicker alone was unsatisfactorily trained. *See City of Canton, Ohio*, 489 U.S. at 390-91. Smith failed to do that here.

Accordingly, the Court must determine whether Smith sufficiently pleaded a widespread practice. To establish a widespread practice, a plaintiff must show that practices, decisions of lawmakers, or acts of policymaking officials are "so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Furthermore, one incident of an alleged constitutional violation is insufficient to show a municipal custom or policy. "The plaintiff must allege a specific pattern or series of incidents that support the general allegation." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) (quoting *Cosby v. Ward*, 843 F.2d 967, 983 (7th Cir. 1988) ("there is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, 'except that it must be more than one instance . . . .'")). Here, Smith failed to allege a specific pattern or series of incidents that supported her general allegation. Consequently, that dog also will not hunt, but the Court will give Smith another shot to sufficiently state a § 1983 claim against Johnston City.

B.   Indemnification Claim (Count IV)

Smith stated that the Illinois Tort Immunity Act does not apply to § 1983

claims and she did not bring any state law claims against Johnston City. (Doc. 20 at 4.)

As a result, Johnston City's Illinois Tort Immunity Act argument related to Count IV of Smith's Complaint is moot, although Smith shall incorporate any necessary elements of Count IV into Count III and eliminate Count IV in the amended complaint to reduce future confusion as to any state law claims against Johnston City.

## CONCLUSION

For the reasons set forth above, Defendant Asa McVicker's Motion to Dismiss (Doc. 13) is **DENIED** in the entirety. Defendant Johnston City, Illinois' Motion to Dismiss (Doc. 17) is **GRANTED in part** related to Count III and **DENIED in part as MOOT** on the remainder in Count IV. Plaintiff Katherine Smith has 7 days to file an amended complaint based on the parameters of this Order.

**IT IS SO ORDERED.**

**DATED:** June 24, 2022

s/ *Stephen P. McGlynn*  
STEPHEN P. McGLYNN  
**U.S. District Judge**